Susan F. BEARD, Plaintiff,

v.

UNITED STATES, Defendant.

No. 10–577T.

United States Court of Federal Claims.

May 6, 2011.

Farley P. Katz, Strasburger & Price, L.L.P., San Antonio, TX.

Shelley de Alth, Attorney, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, D.C., for defendant. With her on the briefs were John A. DiCicco, Acting Assistant Attorney General, and Steven I. Frahm, Chief, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER

LETTOW, Judge.

In this tax-refund case, plaintiff, Susan F. Beard, seeks a refund of payments made to the Internal Revenue Service in connection with the Service's assessment against Ms. Beard of penalties for unpaid employment taxes pursuant to 26 U.S.C. ("I.R.C.") § 6672. Pending before the court is a motion by the government to suspend this case until proceedings are completed in a later-filed suit the government has brought against Ms. Beard in the United States District Court for the Western District of Texas regarding the same employment taxes. Ms. Beard opposes the government's motion and moves to enjoin the government from proceeding against her in the Western District of Texas, relying on Section 6331 of the Internal Revenue Code.

## BACKGROUND[1]

On November 13, 2006, the Internal Revenue Service ("IRS") assessed penalties under I.R.C. § 6672 against Ms. Beard and her former husband, Mr. Shelton Wayne Keith, for unpaid employment taxes withheld from the wages of employees of 4–K, Inc. for the calendar quarters ended June 30, 1999 through June 30, 2005. Am. Compl. ¶ 5; Pl.'s Opp'n to Def.'s Mot. and Pl.'s Mot. to Enjoin ("Pl.'s Cross–Mot.") at 1. For an individual to be liable under I.R.C. § 6672, he or she must: (1) be a "responsible person" under the statute, (2) who is required to collect, truthfully account for, and pay over taxes, and (3) have "willfully" failed to pay over the taxes due. *Salzillo v. United States*, 66 Fed.Cl. 23, 31 (2005); *see also Kennedy v. United States*, 95 Fed.Cl. 197, 202 (2010).[2] During the relevant time peri-

---

1. For the purposes of resolving the pending cross-motions, the court presumes that the allegations in Ms. Beard's amended complaint are true. The recitation of facts is provided solely for purposes of providing a background for analysis of the cross-motions and does not constitute findings of fact by the court. Unless otherwise noted, however, the facts set out appear to be undisputed.

2. Section 6672 of the code provides in relevant part:

Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount

ods, Mr. Keith was President of 4–K, Inc., while Ms. Beard was Secretary. Pl.'s Cross–Mot. at 1.

On February 15, 2010, Ms. Beard paid $100 for each of the quarters, representing the portion of the assessment relating to one employee in each quarter. Am. Compl. ¶ 6. Soon thereafter, on February 22, 2010, Ms. Beard filed a claim for refund with the IRS, seeking the amount she had remitted plus interest on those funds. *Id.* ¶ 7. In that claim, Ms. Beard contended that she was "not a responsible person with respect to [4–K, Inc.], which was in fact controlled by her then husband[, n]or did she willfully cause third parties to be paid knowing that the IRS was not being paid withheld taxes." *Id.* Ms. Beard filed suit in this court on August 25, 2010, seeking a refund of the portion of the assessment that she paid. As of the date of the complaint and that of an amended complaint, the IRS had not allowed or disallowed Ms. Beard's claims for refund. *Id.* ¶ 8. On December 27, 2010, the government filed an answer and a counterclaim to Ms. Beard's complaint for the full amount of the assessed penalties under Section 6672, such penalties totaling $695,446.99. Def.'s Answer ¶¶ 13–15. At that point, all relevant matters attendant to Ms. Beard's liability *vel non* thus were put at issue in the case before this court.

Soon thereafter, however, on January 11, 2011, the government filed suit against Ms. Beard and Mr. Keith in the United States District Court for the Western District of Texas ("the district court"), seeking a judgment against both Ms. Beard and Mr. Keith regarding the same Section 6672 assessments at the center of the dispute in this court. *See* Def.'s Mot. for Suspension of Proceedings ("Def.'s Mot.") Ex. A (Complaint, *United States of America v. Susan F. Beard & Shelton W. Keith,* No. 11–21 (W.D.Tex. Jan. 11, 2011)).[3] On January 12, 2011, the day after the filing of the government's complaint in district court, the government filed a motion in this court requesting a suspension of

Ms. Beard's case until such time as proceedings might be completed in the pending suit in the district court. Def.'s Mot. at 1.

On January 28, 2011, Ms. Beard filed both a response in opposition to the government's motion to suspend and a motion to enjoin the government from proceeding against her in the district court. Ms. Beard argues that the later-filed suit in the district court is barred by the so-called "first-filed rule" and by I.R.C. § 6331(i). Pl.'s Cross–Mot. at 2–4. She requests pursuant to I.R.C. § 6331(i)(4)(B) that this court enjoin the United States from pursuing its case against her in the district court. *Id.* at 7–8.

I.R.C. § 6331(i) was added to the tax code as part of the "Taxpayer Bill of Rights 3" title of the Internal Revenue Service Restructuring and Reform Act of 1998, Pub.L. No. 105–206, § 3433, 112 Stat. 685, 759–60 ("the 1998 Restructuring Act"), and provides in relevant part:

> (i) No levy during pendency of proceedings for refund of divisible tax.—
>
> > (1) In general. *No levy may be made under subsection (a) on the property or rights to property of any person with respect to any unpaid divisible tax during the pendency of any proceeding brought by such person in a proper Federal trial court for the recovery of any portion of such divisible tax which was paid by such person if—*
> >
> > > (A) the decision in such proceeding would be res judicata with respect to such unpaid tax; or
> > >
> > > (B) such person would be collaterally estopped from contesting such unpaid tax by reason of such proceeding.
> >
> > ...
> >
> > (4) Limitation on collection activity; authority to enjoin collection.—
> >
> > > (A) Limitation on collection. *No proceeding in court for the collection of any unpaid tax to which paragraph (1) applies shall be begun by the Sec-*

---

of the tax evaded, or not collected, or not accounted for and paid over.
I.R.C. § 6672(a).

**3.** The government may not bring an action in this court against Mr. Keith nor can it join him

in Ms. Beard's case. *See Klein v. United States,* 31 Fed.Cl. 614, 616 (1994), *aff'd in part, appeal dismissed in part,* 60 F.3d 839 (Fed.Cir.1995) (table, text in Westlaw).

*retary during the pendency of a proceeding under such paragraph.* This subparagraph shall not apply to—

(i) any counterclaim in a proceeding under such paragraph; or

(ii) any proceeding relating to a proceeding under such paragraph.

(B) Authority to enjoin. Notwithstanding section 7421(a), *a levy or collection proceeding prohibited by this subsection may be enjoined (during the period such prohibition is in force) by the court in which the proceeding under paragraph (1) is brought.*

I.R.C. § 6331(i) (emphasis added).[4] I.R.C. § 6331 would appear to bear significantly not only on the question of whether a stay ought to be granted but also on whether this court may enjoin the government from pursuing the action in the district court, insofar as Ms. Beard is concerned.

The parties have filed their respective replies, and on March 8, 2011, the court held oral argument on the pending motions. The competing requests accordingly are ready for disposition.

## ANALYSIS

### A. Motion to Stay

1. *The first-filed rule.*

In general, where two actions involving the same parties and identical issues are pending in different courts, the first-filed action should be given priority and be allowed to proceed before the later action. 17 *James Wm. Moore et al., Moore's Federal Practice* § 111.13[1][o][ii][A] (3d ed. 2010). Usually arising in venue-related disputes, this so-called "first-filed rule" embodies "the inherently fair concept that the party who commenced the first suit should generally be the party to attain its choice of venue." *Id.* (citation omitted). While neither transfer nor venue are at issue here, the first-filed rule counsels that courts give due consideration to a plaintiff's choice of forum general-

ly. *See Kennedy,* 95 Fed.Cl. at 202; *Rineer v. United States,* 79 Fed.Cl. 765, 767 (2007).

The first-filed rule, however, is "neither absolute nor mechanically applied," and circumstances may justify departure from its ordinary application. *Rineer,* 79 Fed.Cl. at 767. In penalty tax impositions brought under Section 6672 prior to the effective date of the 1998 Restructuring Act, "this court generally ... departed from the 'first-filed rule' and ... suspended the first-filed Court of Federal Claims action pending completion of the later-filed district court action involving all of the potential 'responsible persons.'" *Walker v. United States,* 43 Fed.Cl. 519, 521 (1999) (granting government's motion to suspend in a Section 6672 case); *Klein,* 31 Fed. Cl. at 617 (same); *Caparco v. United States,* 28 Fed.Cl. 736, 739 (1993) (same); *but see Rineer,* 79 Fed.Cl. at 767–69 (denying government's motion to suspend in a Section 6672 case where plaintiff asserted that Medicare's reimbursement policies were to blame for tax assessment). The rationale behind such departure was premised primarily on judicial economy, and was most-often applied in situations where, as here, "only one of a number of potentially responsible persons has come before this court seeking a refund and where that plaintiff has argued that another individual (or individuals) possessed control over pertinent operations of the company in question such that the plaintiff should not be considered a responsible person." *Kennedy,* 95 Fed.Cl. at 202. In this instance, Ms. Beard has pointed to Mr. Keith as the culpable person under Section 6672, Am. Compl. ¶ 7; Pl.'s Cross–Mot. at 4–6, raising an issue that could be litigated and resolved in the government's later-filed action in the district court against both Ms. Beard and Mr. Keith. *See* Def.'s Mot. Ex. A. While a disposition of the later-filed case typically would determine responsible-person status with respect to each of the potentially liable parties, a resolution of the case in this court would only resolve that question as to the plaintiff. Nevertheless, the earlier cases in this court discounting the first-filed rule in cases addressing penalties assessed under

---

4. I.R.C. § 6331(i) applies to unpaid taxes attributable to taxable periods beginning after December 31, 1998, *see* 112 Stat. at 760 (note to I.R.C.

§ 6331), and thus encompasses all of the quarters for which Ms. Beard brings her suit for refund.

Section 6672 arose before the enactment or effective date of I.R.C. § 6331(i), a development which changes the framework for analysis.

### 2. *I.R.C. § 6331(i).*

The parties do not dispute that the tax at issue is a divisible tax subject to the provisions of I.R.C. § 6331(i). *See* I.R.C. § 6331(i)(2)(B) (A divisible tax under paragraph (1) includes "the penalty imposed by section 6672 with respect to any such tax."). The parties similarly do not dispute that a judicial resolution of the pending suit would be res judicata with respect to Ms. Beard's liability if this court were to be the first court to enter judgment, or that the reverse would also be true, *i.e.*, that any judgment entered by the district court would bind this court if the district court were the first to enter judgment. *Cf.* I.R.C. § 6331(i)(1)(A), (B).

This court has had only one prior occasion to consider a motion for stay where I.R.C. § 6331(i) was fully effective at the time of the alleged failure to pay unemployment taxes. That case was *Kennedy*, 95 Fed.Cl. 197,[5] which involved factual circumstances divergent from those evident here. In *Kennedy*, the plaintiff was assessed Section 6672 penalties for eighteen employment quarters. 95 Fed.Cl. at 200–01. The plaintiff remitted a portion of the penalties to the IRS, representing the fraction of the assessment relating to one employee for one quarter. *Id.* at 200. The plaintiff then filed suit in this court, seeking a refund of the portion of the assessment paid. The government thereafter filed suit in district court for all eighteen quarterly assessments and sought a stay of the case in this court until such time as proceedings in the district court were resolved. *Id.* at 201. The government argued that I.R.C. § 6331(i) was inapplicable be-

cause the later-filed case in the district court neither constituted a levy nor a "collection proceeding" under I.R.C. § 6331(i). *See id.* at 203. Alternatively, the government contended that its later-filed action constituted a "proceeding relating to" the first-filed action in this court such that it was exempt from I.R.C. § 6331(i) under I.R.C. § 6331(i)(4)(A)(ii). *See id.* The court rejected both of the government's arguments, finding that the later-filed action fell within the meaning of "collection proceeding." *Kennedy*, 95 Fed.Cl. at 204. The court further concluded that while the portion of the later-filed suit that pertained to the seventeen non-suit tax periods were "proceedings relating to a proceeding" under I.R.C. § 6331(i)(4)(A)(ii), the portion of the later-filed suit pertaining to the tax period for which the plaintiff sought refund in this court did not qualify as such. *Id.* at 205–06. Although the court held that the government thus could have been enjoined from pursuing its collection of penalties associated with the one tax period for which plaintiff sought refund, the court declined to grant such an injunction, finding that the plaintiff had failed to satisfy the equitable criteria for such relief. *Id.* at 206–07. Instead, the court granted the government's motion to stay in light of the significant disparity between the temporal scope of the action brought in this court and that pending in the district court. *Id.* at 202–03, 207–08.

The government argues that *Kennedy*, though "rightly decided," was "wrongly reasoned" regarding its interpretation of I.R.C. § 6331(i), Def.'s Mot. at 3 n. 2, and it accordingly reiterates in this case the identical arguments that were rejected in *Kennedy*, *see* Def.'s Reply at 18–27. The government's posture thus compels the court to conduct its own examination of I.R.C. § 6331(i).[6]

---

**5.** In *Unico Servs., Inc. v. United States*, 71 Fed.Cl. 464 (2006), this court considered the applicability of I.R.C. § 6331(i) in the context of a later-pursued levy by the government for periods which were not the subject of the plaintiff's earlier-filed refund suit. That case, while informative, particularly on the subject of the grant of injunctive power under I.R.C. § 6331(i)(4)(B), does not directly address the questions at hand.

**6.** Notably, judicial precedents applying I.R.C. § 6331(i) are sparse. Only two cases from this court, *Kennedy*, 95 Fed.Cl. 197, and *Unico Servs.*, 71 Fed.Cl. 464, and only four district court cases have had occasion to address in depth this section of the Internal Revenue Code. The four district court cases are: *Nakano v. United States*, 2009 WL 2176311 (D.Ariz. July 21, 2009), *vacated on reconsideration*, slip op. (D.Ariz. Nov. 12, 2009) (holding that an airline excise tax had been mistakenly treated as a "divisible" tax under

### 3. *"Collection proceeding" under I.R.C. § 6331(i)(4).*

"[T]he starting point in every case involving construction of a statute is the language itself." *Sursely v. Peake,* 551 F.3d 1351, 1355 (Fed.Cir.2009) (quoting *Santa Fe Indus., Inc. v. Green,* 430 U.S. 462, 472, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977)) (internal quotation marks omitted); *see also Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 438, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999); *Bull v. United States,* 479 F.3d 1365, 1376 (Fed. Cir.2007). " '[W]here the statutory language provides a clear answer, it ends there as well.' " *Hughes Aircraft,* 525 U.S. at 438, 119 S.Ct. 755; *see also Sursely,* 551 F.3d at 1355. If the text of the statute does not furnish a definite answer, the court looks to "the statute's structure, canons of statutory construction, and legislative history." *Bull,* 479 F.3d at 1376 (internal quotations omitted). " 'If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect,' *Chevron* [*U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)], and an agency's alternative interpretation of the statute is not entitled to deference under either *Chevron* or *Skidmore v. Swift & Co.,* 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944)." *Bull,* 479 F.3d at 1376; *see also Snyder v. Nicholson,* 489 F.3d 1213, 1217–18 (Fed.Cir.2007) (same).

■ In interpreting the text of I.R.C. § 6331, the court is guided as well by " 'the cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.' " *TRW, Inc. v. Andrews,* 534 U.S. 19, 31, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001) (quoting *Duncan v.*

*Walker,* 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001)); *Astoria Fed. Sav. & Loan Ass'n v. Solimino,* 501 U.S. 104, 112, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991) (Courts must "construe statutes, where possible, so as to avoid rendering superfluous any parts thereof."). In this same vein, the Federal Circuit has emphasized that a court "must construe a statute, if at all possible, to give effect and meaning to all its terms." *Splane v. West,* 216 F.3d 1058, 1068 (Fed.Cir.2000); *see also Shoshone Indian Tribe of Wind River Reservation v. United States,* 364 F.3d 1339, 1349 (Fed.Cir.2004) ("Accepted rules of statutory construction suggest that we should attribute meaning to all of the words in [a statute] if possible."). In this endeavor, the court "must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law." *Sursely,* 551 F.3d at 1355 (quoting *Gade v. National Solid Wastes Mgmt. Ass'n,* 505 U.S. 88, 99, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992)).

■ I.R.C. § 6331(i)(4)(A) provides categorically that "[n]o proceeding in court for the collection of any unpaid [divisible] tax … shall be begun by the Secretary during the pendency of [any proceeding brought by a person in a proper Federal trial court for the recovery of any portion of a divisible tax]." A separate paragraph, I.R.C. § 6331(i)(1), prohibits the Secretary from initiating a levy under those same circumstances. The government's action in the district court is not a levy, but it would come within the scope of I.R.C. § 6331(i) if it qualifies as a collection proceeding under I.R.C. § 6331(i)(4)(A).

The government argues that "[t]he Texas district court suit is a suit to judicially determine liability, not a collection proceeding barred by [Section] 6331(i)(4)(A)." Def.'s Reply at 22. According to the government, this is so because "the complaint does not mention collection or seizure of assets, nor will collection be at issue as the case pro-

---

I.R.C. § 6331(i)); *Nickell v. United States,* 2009 WL 2031915 (E.D.Tex. Apr. 2, 2009), *report and recommendation adopted,* 2009 WL 1604990 (E.D.Tex. June 8, 2009); *Conway v. United States,* 2009 WL 2031856 (Mar. 26, 2009), *withdrawn,* 2009 WL 5412771 (E.D.Tex. Nov. 30, 2009) (holding that an airline excise tax had been mistakenly treated as a "divisible" tax under I.R.C.

§ 6331(i)); *Swinford v. United States,* 2007 WL 496376 (W.D.Ky. Feb. 9, 2007), *vacated,* 2008 WL 4682273 (W.D.Ky. June 20, 2008) (vacating decision where government had appealed decision to Sixth Circuit but plaintiff had paid full outstanding balance of the tax assessment while the appeal was pending).

ceeds toward resolving Ms. Beard's and Mr. Keith's liability." *Id.* The government maintains that I.R.C. § 6331(i)(4)(A) bars only subsequently-pursued "enforcement suits, in which the judgment is collected upon, through additional means, such as a suit to foreclose a lien (§ 7403), a suit for writ of entry onto taxpayer's residence or business premises to seize assets (§ 7402(a)), or a suit to impose receivership (§§ 7402(a), 7403(d))." *Id.* at 23. Pointing to the reasoning in *Kennedy*, Ms. Beard argues that the suit in the district court is a collection proceeding within the meaning of I.R.C. § 6331(i)(4)(A). Pl.'s Reply at 3.

The term "collection proceeding" is not defined in I.R.C. § 6331, but the government's complaint, other provisions of the Code, and the legislative history of the Act are revealing as to this question. The government brought its later-filed action "pursuant to 26 U.S.C. §§ 7401, 7402 and 7403." Def.'s Mot. Ex. A, at 1. Tellingly, I.R.C. § 7401 provides that "[n]o civil action for the collection or recovery of taxes, or of any fine, penalty, or forfeiture, shall be commenced unless the Secretary authorizes or sanctions the proceedings...." That the government brought its suit in the district court pursuant to statutory authority providing for "the collection or recovery of taxes" would suggest that the action is indeed a "collection proceeding." [7]

I.R.C. § 6502 further undermines the government's position by demonstrating the assumption within the Code that the government may seek to enforce a tax via one of two means: collection by levy or collection by a court proceeding. Entitled "Collection after assessment," Section 6502 specifies the statute of limitations for collection actions and states that "[w]here the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, *such tax may be collected by levy or by a proceeding in court,* but only if

the levy is made or the proceeding begun ... within 10 years after the assessment of the tax." I.R.C. § 6502(a).[8] This statutory structure and attendant statute of limitations negate the idea that the government's pursuit of a judgment for a tax assessment is a separate pre-collection step. Instructively, the Internal Revenue Code contains no authorization for any procedural "precollection judgment" along the lines urged by the government. The absence of any statutory predicate for any so-called "pre-collection judgment" further weakens the government's position. In sum, the statutory context uniformly undercuts and does not support the government's argument that the district court action is not a collection proceeding.

The legislative history of I.R.C. § 6331(i) likewise controverts the government's argument. The Senate Report accompanying the 1998 Restructuring Act reveals that the intention behind I.R.C. § 6331(i) was to extend the same protections afforded to litigants who bring their refund suits in Tax Court to those who must or elect instead to bring refund suits in this court or a district court. *See* S.Rep. No. 105–174, at 79–80 (1998). The Report observed that "[t]he IRS is prohibited from making a tax assessment (and thus prohibited from collecting payment) with respect to a tax liability while it is being contested in Tax Court," yet "it is possible the taxpayer could be properly under the refund jurisdiction of the District Court or the U.S. Court of Federal Claims and still be subject to collection by levy with respect to the entire amount of the tax at issue." *Id.* at 79. Thus, the motivation behind the pertinent provision in the 1998 Restructuring Act was the Committee's belief that "taxpayers who are litigating a refund action over divisible taxes should be protected from collection of the full assessed amount, because the court considering the refund suit may ultimately determine that the taxpayer is not liable." *Id.* at 80. In explaining the effect of

---

7. I.R.C. § 7402 provides the district courts with jurisdiction over civil actions to enforce the internal revenue laws, and I.R.C. § 7403 governs actions to enforce liens or to subject property to payment of a tax.

8. *See also* 26 C.F.R. § 301.6502–1 ("In any case in which a tax has been assessed within the applicable statutory period of limitations on assessment, *a proceeding in court to collect the tax may be commenced, or a levy to collect the tax may be made,* within 10 years after the date of assessment.") (emphasis added).

I.R.C. § 6331(i), the Report stated that "[t]he provision requires the IRS to withhold collection by levy of liabilities that are the subject of a refund suit during the pendency of the litigation." *Id.*

The government contends that the Senate Report demonstrates "Congress's intent to protect a taxpayer's *assets from seizure* until his employment tax liability is resolved." Def.'s Reply at 21 (emphasis added); *see also* Hr'g Tr. 9:23 to 24 (Mar. 8, 2011). While the Report undoubtedly focuses on collection by levy, the government's interpretation would render I.R.C. § 6331(i)(4)(A) entirely superfluous. A seizure of a taxpayer's assets to satisfy a tax debt is, of course, a levy. *See* I.R.C. § 6331(b) ("In any case in which the Secretary may levy upon property or rights to property, he may seize and sell such property or rights to property."); *see also Black's Law Dictionary* 919 (7th ed. 1999) (defining "levy" as "[t]he legally sanctioned seizure and sale of property"). If all Congress sought to accomplish through enacting I.R.C. § 6331(i) was the prohibition of the seizure of a taxpayer's assets, it could have stopped at I.R.C. § 6331(i)(1); however, it adopted I.R.C. § 6331(i)(4)(A) to encompass collection actions as well.

Furthermore, the House Conference Report on the 1998 Restructuring Act explains that under I.R.C. § 6331(i) "[t]he Secretary could not commence a civil action to collect a liability except in a proceeding related to the initial refund proceeding." H.R.Rep. No. 105–599, at 279 (1998) (Conf.Rep.). In explaining the scope of the "proceeding related to a proceeding" exemption to the bar on later-instituted actions, I.R.C. § 6331(4)(a)(ii), the Conference Report stated:

> For example, if a taxpayer brings a suit for a refund of a portion of a penalty that the taxpayer has paid under section 6672, *the United States could*, consistent with this provision, *counterclaim against the taxpayer* for the balance of the penalty *or initiate related claims against other per-*

*sons* assessed penalties under section 6672 for the same employment taxes.

*Id.* at 280 (emphasis added). As the court noted in *Kennedy*, "Congress would not have had to clarify its intent to exempt the I.R.C. § 6672 actions in the Conference Report example unless Congress understood that I.R.C. § 6672 actions fell within the category of 'proceeding[s] in court for the collection of any unpaid tax to which [I.R.C. § 6331(i)(1) ] applies.' " 95 Fed.Cl. at 205; *see also Nakano*, 2009 WL 2176311, at *4 (rejecting the same argument by the government and noting that "[t]he point [of I.R.C. § 6331(i)(A)(4) ] ... is that a taxpayer who brings a properly filed refund suit is entitled not to have another court contemporaneously adjudicate his liability").

Accordingly, the court concurs with the conclusion of *Kennedy* that the government's later-filed action in the district court is a "collection proceeding" within the meaning of I.R.C. § 6331(i)(4)(A).[9]

4. *"Proceeding relating to a proceeding" exception under I.R.C. § 6331(i)(4)(A)(ii).*

The government argues that even if its suit in the district court constitutes a "collection proceeding," it is not barred by I.R.C. § 6331(i)(4)(A) because it is a "proceeding relating to a proceeding [brought under I.R.C. § 6331(i)(1) ]." Def.'s Reply at 23–27. In the government's view, because the two pending suits "concern the same employment taxes for the same tax periods with the same underlying facts and circumstances that will determine the same legal issue, *i.e.*, liability for the unpaid employment taxes ..., the two suits have a relationship and connection" and fall within the exception of I.R.C. § 6331(i)(4)(A)(ii). *Id.* at 24.

While "proceeding relating to a proceeding" is not defined within the statute, the legislative history is illuminating on this

---

9. In the district court cases implicating I.R.C. § 6331(i), the government has either conceded that a suit seeking a judgment regarding a person's liability under Section 6672 is a collection proceeding, *see Nickell*, 2009 WL 2031915, at *2; *Conway*, 2009 WL 2031856, at *2, or the court has found as much, *see Nakano*, 2009 WL 2176311, at *1; *Swinford*, 2007 WL 496376, at *2–3.

point as well. The Conference Report on the bill included the following observation:

> The conferees wish to clarify that proceedings related to a proceeding under this provision include, but are not limited to, civil actions or third-party complaints initiated by the United States or another person with respect to the same kinds of tax (or related taxes or penalties) for the same (or overlapping) tax periods.

H.R.Rep. No. 105–599, at 279–80. The Senate Report similarly stated:

> *This provision will not affect the IRS's ability to collect other assessments that are not the subject of the refund suit*, to offset refunds, to counterclaim in a refund suit or related proceeding, or to file a notice of Federal tax lien.

S.Rep. No. 105–174, at 80 (emphasis added).

The government argues that these passages support the notion that "a suit brought by the United States to determine liability with respect to the same tax liability at issue in a refund suit, regardless of who the suit is brought against, is a related proceeding not barred by [Section] 6331(i)(4)." Def.'s Reply at 27. This argument is not supportable. Rather, it is directly contradicted by statements in the Conference Report and Senate Report. The Conference Report would not have included the clarification that the exemption encompassed civil actions or third-party complaints brought by the United States "with respect to the *same kinds of taxes (or related taxes or penalties) for the same (or overlapping) tax periods*" if the exemption included a suit by the United States for precisely the taxes at issue in the earlier-filed suit. H.R.Rep. No. 105–599, at 279–80. Nor would it have included the statement that the United States could counterclaim or initiate "related claims against *other persons* assessed penalties under section 6672 for the same employment taxes," if the government were permitted to bring such claims for the same penalties against the same first-filing plaintiff. *Id.* at 280. Correlatively, the Senate Report would not have stated that the IRS may pursue assessments "*that are not the subject of the refund suit*" if it had intended the exemption to allow a suit for assessments which *are* the

subject of the refund suit. S.Rep. No. 105–174, at 80.

That the later-filed suit shares the same operative facts and legal issues with the earlier-filed suit does not bring the later-filed suit within the scope of the "proceeding relating to a proceeding" exemption. As the court in *Kennedy* noted, such a reading would "render the protections Congress sought to provide a taxpayer meaningless, because, under the government's reading of I.R.C. § 6331(i)(4)(A)(ii), any proceeding to collect a tax under I.R.C. § 7401 would be a 'proceeding relating to' the earlier-filed refund suit." 95 Fed.Cl. at 206. Indeed, every court that has had an opportunity to consider the government's argument as to this issue has summarily rejected the government's position. *See Kennedy*, 95 Fed.Cl. at 206; *Nakano*, 2009 WL 2176311, at *2; *Nickell*, 2009 WL 2031915, at *3–4; *Conway*, 2009 WL 2031856, at *2; *Swinford*, 2007 WL 496376, at *3–4.

Accordingly, the court concludes that the government's later-filed suit is not a "proceeding relating to a proceeding." It is thus subject to the bar imposed by I.R.C. § 6331(i)(4)(A) and the potential injunction authorized by I.R.C. § 6331(i)(4)(B).

### 5. *Synopsis.*

Congress endeavored through I.R.C. § 6331(i)(1) and (4) to prevent the United States from initiating a levy or collection proceeding regarding a divisible-tax penalty where a plaintiff has already filed a refund suit for payments rendered in whole or partial satisfaction of the penalty. Although I.R.C. § 6331 does not by its terms prohibit the grant of a stay in this case, the government's later-filed suit is in contravention of that statute. In this respect, the government's arguments of judicial economy were effectively overridden by Congress. *See, e.g., Conway*, 2009 WL 2031856, at *2 n. 3 ("Though judicial economy may *best* be served by staying this action and allowing the [later-filed suit] to proceed against [both potential responsible persons], allowing the United States to benefit from filing a prohibited action would undermine the statutory intent."); *Rineer*, 79 Fed.Cl. at 769 (I.R.C.

§ 6331(i) "reflect[s] the preference of Congress to preserve the taxpayer's selection of forum, even at the cost of judicial economy."). For the above reasons, the government's motion to stay this action to allow the later-filed action to proceed is denied.

### B. Motion to Enjoin

Ms. Beard requests that this court enjoin the government from pursuing its case in district court against her, relying on I.R.C. § 6331(i)(4)(B). Pl.'s Cross–Mot. at 7. Ms. Beard argues that "where, as here, there is an express statutory authorization for an injunction, courts have held that the injunction may be granted where the movant simply establishes [the] factual predicates in the statute and [the plaintiff] does not also need to establish traditional equitable principles." *Id.* at 7–8; *see also* Pl.'s Reply at 4. Alternatively, Ms. Beard argues that she has satisfied the equitable requirements for an injunction. Pl.'s Cross–Mot. at 8; Pl.'s Reply at 4–5.

The government raises an array of arguments against Ms. Beard's cross-motion. It first avers that this court lacks jurisdiction to enjoin the proceeding because the use of the word "court" in I.R.C. § 6331(i)(4)(B) does not include this court. Def.'s Reply at 8–11. It seems additionally to contend that a textual ambiguity exists in I.R.C. § 6331(i)(4)(B) that effectively prevents the issuance of an injunction. *See* Hr'g Tr. 17:7 to 20:10. Finally, the government argues that Ms. Beard has not satisfied the equitable prerequisites for an injunction. Def.'s Reply at 11.

*1. The grant of injunctive power under I.R.C. § 6331(i)(4)(B).*

It is well-established that this court "has no *general* power to provide equitable relief against the [g]overnment or its officers." *United States v. Tohono O'Odham Nation,* 563 U.S. ——, ——, 131 S.Ct. 1723, 1729, 179 L.Ed.2d 723 (2011) (emphasis added). In a number of instances, however, this court has been granted power to issue equitable relief by a specific Act of Congress.[10] In accord with the exacting scrutiny to which waivers of sovereign immunity are subjected, grants of equitable power to this court "require a specific and express statute of Congress." *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969).[11]

The portion of I.R.C. § 6331(i)(4) that confers equitable power provides:

(B) Authority to enjoin. Notwithstanding section 7421(a), a levy or collection proceeding prohibited by [I.R.C. § 6331(i)(1) and I.R.C. § 6331(i)(4) ] may be enjoined (during the period such prohibition is in force) by the court in which the proceeding under paragraph (1) is brought.

I.R.C. § 6331(i)(4)(B).[12] By its terms, I.R.C. § 6331(i)(4)(B) grants the power to enjoin a prohibited proceeding under I.R.C. § 6331(i)(1) or (i)(4) to the court in which the first-filed suit is pending. This court has long had jurisdiction over tax refund suits. In the historical antecedent to the Tucker Act, 28 U.S.C. § 1491(a), Congress explicitly granted to this court jurisdiction over tax refund claims, including claims for refund of tax penalties paid. *See United States v.*

---

**10.** Thus, this court may issue certain types of declaratory orders where such relief is "[t]o provide an entire remedy and to complete the relief afforded by the [money] judgment." 28 U.S.C. § 1491(a)(2). Pursuant to 28 U.S.C. § 1491(b)(2), this court may also grant injunctive and declaratory relief in bid protest actions. *See also, e.g.,* 28 U.S.C. § 1491(a)(2) (conferring "jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 7104(b)(1) of title 41, including ... rights in tangible or intangible property, compliance with cost accounting standards, and other nonmonetary disputes on which a decision of the contracting officer has been issued under section 6 of th[e preexisting Contract Disputes] Act[, now recodified as 41 U.S.C. § 7103]."); 28 U.S.C. § 1507 (granting this court jurisdiction to issue

declaratory judgments in certain types of tax cases).

**11.** *King* was partially superseded by statute as noted in *Placeway Constr. Corp. v. United States,* 920 F.2d 903, 906 (Fed.Cir.1990). *See also Infiniti Info. Solutions, L.L.C. v. United States,* 93 Fed.Cl. 699, 702 n. 2 (2010).

**12.** The reference to Section 7421(a) is to the Tax Anti–Injunction Act, which provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person." There are explicit statutory exceptions to the Anti–Injunction Act, *see Schlabach v. United States,* 97 Fed.Cl. 232, 234 n. 5 (2011), of which I.R.C. § 6331(i) is one.

*Kaufman,* 96 U.S. 567, 568–70, 24 L.Ed. 792 (1877) (concluding that a claim for refund of taxes was "founded upon a[ ] law of Congress" within the meaning of Rev. Stat. sec. 1059, reflecting the Act of February 24, 1855, ch. 122, 10 Stat. 612, creating the Court of Claims, and distinguishing *Nichols & Co. v. United States,* 74 U.S. (7 Wall.) 122, 19 L.Ed. 125 (1868)); *see also United States v. Emery, Bird, Thayer Realty Co.,* 237 U.S. 28, 35 S.Ct. 499, 59 L.Ed. 825 (1915) (Holmes, J.) (addressing the jurisdiction of a district court sitting as an alternative court of claims for an action not seeking more than $10,000).[13] Subsequently, district courts were granted concurrent jurisdiction with this court over such suits, expressly encompassing "any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws." 28 U.S.C. § 1346.[14]

Citing *King,* the government nonetheless argues that the use of the word "court" in I.R.C. § 6331(i)(4)(B) is insufficient to include this court within its terms. Def.'s Reply at 10. In *King,* however, the Supreme Court reminded that a grant of equitable jurisdiction to this court "depends wholly upon the extent to which the United States has waived its sovereign immunity to suit." 395 U.S. at 4, 89 S.Ct. 1501. Here, Congress long ago explicitly provided this court with jurisdiction over tax-refund claims, and thus it is a court in which a divisible-tax-refund claim could be brought. Indeed, in its explanation of the law prior to the enactment of I.R.C. § 6331, the Senate Report noted that taxpayers "properly under the refund jurisdiction of the district court *or the U.S. Court of Federal Claims*" were vulnerable to collection actions, and it was that vulnerability that Congress sought to redress. See S.Rep. No. 105–174, at 79.

In short, the court is persuaded that Congress granted this court the injunctive power set out in I.R.C. § 6331(i)(4)(B). *Accord*

*Kennedy,* 95 Fed.Cl. at 206 n. 4 (concluding that I.R.C. § 6331(i)(4)(B)'s grant of injunctive power includes the Court of Federal Claims); *Unico Servs.,* 71 Fed.Cl. at 466–67 (same).

2. *The object of an injunction under I.R.C. § 6331(i)(4)(B).*

At the hearing on the cross-motions currently pending before the court, the parties sharply disagreed about the operative terms of any injunction that might issue—specifically over the person who or entity which could properly be enjoined pursuant to I.R.C. § 6331(i)(4)(B). Although I.R.C. § 6331(i)(4)(A) states that "the Secretary" may not begin a levy or collection proceeding under the prohibited circumstances, I.R.C. § 6331(i)(4)(B) simply provides that "a levy or collection proceeding prohibited by [I.R.C. § 6331(i) ] may be enjoined (during the period such prohibition is in force) by the court in which the [earlier] proceeding ... is brought." Under the government's view, the statute "suggests that it is the [d]istrict [c]ourt that is supposed to be enjoined under the statute" but "th[is] [c]ourt does not have the authority to enjoin the [d]istrict [c]ourt." Hr'g Tr. 18:19 to 20, 19:16 to 18. The government argues alternatively that while the Secretary may be the party against whom the injunction could issue, "an injunction issued to the Secretary would have no effect ... [because the Department of] Justice has sole decision[-]making authority over prosecuting th[e] case in the [d]istrict [c]ourt." Hr'g Tr. 17:14 to 17. The government contends finally that "there is nothing in the statute that would authorize the court to enjoin the Department of Justice," Hr'g Tr. 20:2 to 4, and "[t]here is also nothing in the statute that allows the [c]ourt to enjoin the United States." Hr'g Tr. 20:8 to 10. In short, the government argues that the grant of injunctive power in I.R.C. § 6331(i)(4)(B) is quite literally a nullity; an injunction could

13. For a recitation of the early history of tax-refund claims in this court, *see Hinck v. United States,* 64 Fed.Cl. 71, 74–76 (2005), *aff'd,* 446 F.3d 1307 (Fed.Cir.2006), *aff'd,* 550 U.S. 501, 127 S.Ct. 2011, 167 L.Ed.2d 888 (2007).

14. Earlier, the district courts had a similar but indirect juridical power, *i.e.,* "[t]he right to sue the collector for an unjustified collection was given by the common law," and such an action could be brought in district courts. *Emery, Bird, Thayer Realty Co.,* 237 U.S. at 31, 35 S.Ct. 499.

only *possibly* issue against the Secretary of the Treasury, but that injunction would not prevent the prosecution of the case in the district court. Under Ms. Beard's view, it is "clear that the injunction would be against the United States." Hr'g Tr. 36:1 to 3.

Although the Secretary is the only entity mentioned in I.R.C. § 6331(i), by law, the Department of Justice must prosecute the Secretary's cases. *See* 28 U.S.C. § 516 ("Except as otherwise authorized by law, the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefor, is reserved to officers of the Department of Justice, under the direction of the Attorney General."); *see also* 28 U.S.C. § 519 ("Except as otherwise authorized by law, the Attorney General shall supervise all litigation to which the United States, an agency, or officer thereof is a party."); 26 U.S.C. § 7401 ("No civil action for the collection or recovery of taxes, or of any fine, penalty, or forfeiture, shall be commenced unless the Secretary authorizes or sanctions the proceedings and the Attorney General or his delegate directs that the action be commenced."). Yet the Department of Justice, of course, is not the actual party to the case—the United States of America is. *See* Def.'s Mot. Ex. A, at 1 (listing United States of America as plaintiff). The government thus seeks to insulate itself entirely from I.R.C. § 6331(i)(4)(B) by resort to the style by which the government refers to itself in IRS collection proceedings accomplished through civil actions.

Contrary to the government's arguments, I.R.C. § 6331(i)(4)(B) has a biting effect where applicable and cannot be rendered a

nullity by stylistic sophistry. The legislature sought, through I.R.C. § 6331(i)(4)(B), to empower a court in which a plaintiff had filed a divisible-tax-refund action to prevent the progression of a subsequent collection proceeding (or levy) by the United States. Under these circumstances, the only reading of I.R.C. § 6331(i)(4)(B) which is consistent with congressional intent and harmonious with the entire text of I.R.C. § 6331(i) is that I.R.C. § 6331(i)(4)(B) authorizes an injunction to issue against the United States.[15]

For the foregoing reasons, the court thus finds that the government's pending suit in the district court *may* be enjoined by the issuance of an injunction against the United States of America.[16] Whether an injunction *ought* to issue in this case is a separate question, however.

### 3. *Equitable requisites for an injunction.*

■ Ms. Beard argues that because I.R.C. § 6331(i)(4)(B) expressly authorizes the court to grant an injunction, she need not satisfy the quotidian equitable requisites for that relief. Pl.'s Cross-Mot. at 7–8. Alternatively, Ms. Beard argues that she has established the equitable requirements for the issuance of an injunction. *Id.* at 8. The government avers that "[w]here, as here, the statutory authorization for injunctive relief is *permissive,* rather than mandatory, equitable prerequisites must be shown before an injunction can issue[,]" and that Ms. Beard has failed to do so. Def.'s Reply at 11.

The Supreme Court has opined that it is not "lightly assume[d] that Congress has intended to depart from established principles

**15.** Prior district court cases have enjoined the Secretary, *Nickell,* 2009 WL 2031915, at *4, *Conway,* 2009 WL 2031856, at *3, or both the United States and the forum of the later-filed suit, *see Nakano,* 2009 WL 2176311, at *5 (granting Plaintiff's Motion to Enjoin Proceedings, No. 08–1026, ECF No. 20 (filed Oct. 24, 2008) (moving for entry of injunction against United States of America and United States District Court for the District of Nevada)); *Swinford,* 2007 WL 496376, at *4 (granting Plaintiffs' Motion to Enjoin Proceedings, No. 05–234, ECF No. 13 (filed July 10, 2006) (moving for entry of injunction against United States of America and United States District Court for the Western District of Louisiana)).

**16.** This conclusion renders moot the government's argument that were the court to issue an injunction, it would "amount[] to an advisory opinion" because such a jurisdictional determination would not be controlling—*that is,* the district court would be free to continue and decide whether it possessed jurisdiction over Ms. Beard's case. Def.'s Reply at 4–5. An injunction barring the United States from proceeding against Ms. Beard in district court would most certainly be controlling of the government's conduct and thus have direct effect and consequences.

[of equity]" in the issuance of injunctions. *Amoco Prod. Co. v. Village of Gambell, AK,* 480 U.S. 531, 542, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987) (quoting *Weinberger v. Romero–Barcelo,* 456 U.S. 305, 313, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982)); *see also Romero–Barcelo,* 456 U.S. at 313, 102 S.Ct. 1798 ("The grant of jurisdiction to ensure compliance with a statute hardly suggests an absolute duty to do so under any and all circumstances, and a federal judge sitting as chancellor is not mechanically obligated to grant an injunction for every violation of law."); *Rondeau v. Mosinee Paper Corp.,* 422 U.S. 49, 60–61, 95 S.Ct. 2069, 45 L.Ed.2d 12 (1975). In this instance, the inclusion of the permissive language of "may" within the statutory grant of injunctive authority means Ms. Beard is not automatically entitled to injunctive relief but rather that the court must evaluate the traditional equitable factors in determining whether such relief should issue. *See, e.g., eBay, Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391–93, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006) (Patent Act, 35 U.S.C. § 283, which provided that injunctive relief "may" issue "in accordance with principles of equity" did not authorize categorical issuance of injunctive relief upon infringement); *New York Times Co., Inc. v. Tasini,* 533 U.S. 483, 505, 121 S.Ct. 2381, 150 L.Ed.2d 500 (2001) (Copyright Act, 17 U.S.C. § 502(a), which provides that courts "may" issue injunctive relief "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright," did not require automatic issuance upon infringement); *PGBA, L.L.C. v. United States,* 389 F.3d 1219, 1226 (Fed.Cir.2004) (Tucker Act, "28 U.S.C. 1491(b)(2), ... through use of the permissive 'may,' provides the Court of Federal Claims with discretion in fashioning relief" and does not require the court to enjoin all unlawful or arbitrary agency decisions); *Kennedy,* 95 Fed.Cl. at 207 (traditional equitable factors must still be considered under I.R.C. § 6331(i)(4)(B)).[17]

In deciding whether to issue an injunction, a court considers: (1) whether plaintiff has succeeded on the merits; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships favors an injunction; and (4) whether an injunction is in the public interest. *PGBA,* 389 F.3d at 1228–29. "No one factor, taken individually, is necessarily dispositive." *FMC Corp. v. United States,* 3 F.3d 424, 427 (Fed.Cir.1993) (addressing comparable factors that bear on preliminary injunctive relief). A weak showing regarding one factor "may be overborne by the strength of the others," but, "the absence of an adequate showing with regard to any one factor may be sufficient, given the weight or lack of it assigned the other factors, to justify ... denial." *Id.*

Ms. Beard has satisfied the first criterion by showing that the government's later-filed suit in the district court is a "collection proceeding" under I.R.C. § 6331(i)(4)(A) and does not fall within the "proceeding relating to a proceeding" exemption under I.R.C. § 6331(i)(4)(A)(ii). *See Kennedy,* 95 Fed.Cl. at 207.

The relevant inquiry in weighing the second factor is whether it is likely plaintiff will suffer irreparable harm if an injunction is not issued. *See Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, ——, 129 S.Ct. 365, 374–75, 172 L.Ed.2d 249 (2008). In this vein, the court considers whether the plaintiff has an adequate remedy at law in the absence of an injunction. *See Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 380–81, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992); *see also Romero–Barcelo,* 456 U.S. at 312, 102 S.Ct. 1798; *Eli Lilly & Co. v. American Cyanamid Co.,* 82 F.3d 1568, 1578 (Fed.Cir.1996) (approving district court's consideration of the same). The government argues that "Ms. Beard cannot show irreparable injury merely from litigating her claim of non-liability in Texas district court instead of this [c]ourt" because "Ms. Beard will have her day in [the district]

---

17. Ms. Beard cites a handful of cases to the contrary, *see* Pl.'s Mot. at 8, but such cases are in tension with precedents from the Supreme Court and the Federal Circuit. In this vein, three of the district court cases interpreting I.R.C. § 6331(i)(4)(B) indicated that a plaintiff need *not* satisfy the equitable factors for an injunction, *see Nickell,* 2009 WL 2031915, at *4; *Conway,* 2009 WL 2031856, at *2; *Swinford,* 2007 WL 496376, at *4 n. 5, while the fourth case called the issue an "unsettled question of law." *See Nakano,* 2009 WL 2176311, at *3.

court regarding her [Section] 6672 liability there, just as she would in this [c]ourt" and because "Texas is a preferable venue to litigate this case, since Ms. Beard, her counsel, and 4–K, Inc. are all located in Texas." Def.'s Reply at 13. In making this argument, however, the government ignores the effect of the court's denial of its motion to stay. Because the motion to stay is unavailing, the case in this court should proceed along a normal schedule. If the later-filed suit were to continue in due course, despite the mandates of I.R.C. § 6331(i)(4)(A), Ms. Beard would be forced to litigate both this case and defend herself in district court. The significant financial and personal tolls of simultaneous litigation favor an injunction in this case. Indeed, in the absence of an injunction, Ms. Beard would be forced "to take the very risk contemplated by the Senate Finance Committee when enacting [Section] 6331—namely, that [s]he may be forced to pay the full assessed amount before this [c]ourt determines that [s]he is not liable." *Nakano,* 2009 WL 2176311, at *3.[18] The only potential legal remedy to avoid this harm to Ms. Beard would be her filing in the district court of a motion to dismiss for lack of jurisdiction, relying on I.R.C. § 6331(i)(4)(A) ("No proceeding in court for the collection of any unpaid [divisible] tax ... shall be begun by the Secretary during the pendency of a [refund] proceeding."), but that speculative solution cannot serve as an "adequate remedy." [19]

Under the third factor, the court considers "the balance of hardships between the plaintiff and the defendant [to determine whether] a remedy in equity is warranted." *i4i Ltd. P'ship v. Microsoft Corp.,* 598 F.3d 831, 861 (Fed.Cir.2010), *cert. granted,* —— U.S. ——, 131 S.Ct. 647, 178 L.Ed.2d 476 (Nov. 29, 2010). This consideration requires the court to "assess[ ] the relative effect of granting or denying an injunction on the parties." *Id.* at 862, *see also Winter,* 555 U.S. at ——, 129 S.Ct. at 376. The government asserts that "the balance of hardships and the public interest undeniably favor having one suit to determine the [Section] 6672 liabilities at issue ... [and] two suits would be duplicative and a waste of resources because they involve the same company, the same witnesses, and the same facts and circumstances about non-payment of taxes and Ms. Beard's and Mr. Keith's responsibility and authority." Def.'s Reply at 13–14. Ms. Beard similarly points to harm from duplicative litigation, invoking the obverse perspective, contending that requiring her to litigate the two suits, only to face the possibility that the Fifth Circuit could ultimately determine that the district court lacked jurisdiction over the later-filed suit after Ms. Beard has "exhaust[ed] all [of] her funds," demonstrates that she bears the greater hardships in this case. Hr'g Tr. 35:4 to 10.[20]

When the government assessed penalties against both Ms. Beard and Mr. Keith, it certainly was on notice that either Ms. Beard or Mr. Keith or both could file a refund action. The government could have avoided the possibility of two separate suits by filing the collection action promptly, and certainly within the nearly four years that passed between the assessment of penalties against Ms. Beard and the filing of her complaint in this court. More importantly, however, subjecting Ms. Beard to the actual, imminent injury of the cost of two suits constitutes the

---

**18.** The government endeavors to rebut this prospect, stating that "the risk Congress contemplated was collection prior to judicial determination of liability [and] it is of no moment which court makes this determination nor whether the determination is made in a refund suit or in affirmative litigation." Def.'s Reply at 15. Because the court has found that the government's suit in the district court constitutes a subsequent "collection proceeding" which Congress prohibited via I.R.C. § 6331(i)(4), the court is not persuaded by the government's response.

**19.** At the hearing, counsel for Ms. Beard represented that she has not yet formally contested the district court's jurisdiction by motion, in an effort to conserve resources. H'rg Tr. 31:21 to 25.

**20.** Litigation of the responsible-person issues in either of the cases shows signs of being contentious because Ms. Beard avers that Mr. Keith has a history of engaging in fraudulent behavior. *See* H'rg Tr. 33:3 to 10. Often responsible-person cases focus on the issue of who controlled whether federal employment taxes would be paid, *see Salzillo,* 66 Fed.Cl. at 26, and credibility findings can be important in that regard. *See id.* at 29–31.

hardship from which she was supposed to be protected by I.R.C. § 6331(i).

Fourth, these same considerations inform the court's evaluation of whether an injunction is in the public interest. The court must be concerned both with preventing a misallocation of public resources and in vindicating laws enacted for the protection of individuals. *See American Signature, Inc. v. United States,* 598 F.3d 816, 830 (Fed.Cir.2010); *Mylan Pharms., Inc. v. Shalala,* 81 F.Supp.2d 30, 45 (D.D.C.2000) ("It is in the public interest for courts to carry out the will of Congress and for an agency to implement properly the statute it administers."). In this connection, I.R.C. § 6331(i) was added to the Internal Revenue Code as part of the "Taxpayer Bill of Rights 3" in the 1998 Restructuring Act and was enacted to prevent the government from initiating the precise action it has brought in the district court.

In sum, Ms. Beard has established that an injunction is appropriate in this case.

## CONCLUSION

For the reasons stated, the government's motion to stay proceedings is DENIED. Ms. Beard's cross-motion to enjoin the United States from continuing its collection action against her in the Western District of Texas is GRANTED, and the United States is enjoined from proceeding against Ms. Beard in that action in that court.

The government's motion for an extension of time to file the joint preliminary status report is GRANTED. The parties shall file that report on or before June 3, 2011. The government's motion for leave to file notice of an answer by Mr. Keith in the district court proceedings is also GRANTED.

It is so ORDERED.